## 11609.  RANSOM v. NUNNALLY COMPANY.

1. "The employment of a minor under the prescribed age in a factory, in disobedience of the statute prohibiting such employment, is negligence per se; and if injury to such child proximately results from the employment, a right of action in its favor arises." *Elk Cotton Mills* v. *Grant*, 140 *Ga.* 727 (79 S. E. 836).

(a) "The statutory prohibition against employing children under a prescribed age in a factory excludes the defense of the assumption by them of risks incident to such employment." Id.

(b) "The diligence required of a child of tender years is not to be measured by the ordinary care required of an adult; but due care in such a child is such care as its capacity, mental and physical, fits it for exercising in the actual circumstances of the occasion and situation." Id. See, however, *Evans* v. *Josephine Cotton Mills*, 119 *Ga.* 448 (46 S. E. 674).

2. A minor who falsely represents herself to be over sixteen years of age for the purpose of securing employment in a manufacturing plant, is not estopped from showing, in an action against the employer to recover damages for personal injuries, that she was under the age at which the statute permitted her to be employed in such a plant.

(a) The manufacturer may defend such an action by showing that he exercised due diligence to find out the minor's age before employing her; and whether such diligence was exercised is a question for the jury. See *Askew* v. *State*, 4 *Ga. App.* 446 (61 S. E. 737), and cases cited for analogous principle.

3. It was error to grant a nonsuit in this case. The evidence for the plaintiff raised a question for determination by a jury.

DECIDED JANUARY 27, 1921.

Action for damages; from Fulton superior court — Judge Pendleton. April 21, 1920.

*Bell & Ellis, Joseph W. Humphries,* for plaintiff.

*Bryan & Middlebrooks,* for defendant.

LUKE, J. Myrtice Ransom, by her next friend, brought an action for damages against the Nunnally Company, alleging, in substance, that the defendant employed her to work in its factory as a candy-packer; that on the second or third day after such employment she was put to work at a caramel-chopper, a machine composed of a wheel with a large knife attached, the wheel being turned by another employee by means of a revolving crank; that the operator would place slabs of candy under the knife and then turn the crank, causing the knife to chop down and cut the candy into pieces; that the plaintiff was required to pull out the pieces of

candy as they were cut off by the knife; that in September, 1918, while she was at work as above described, the knife came down and cut off certain of the fingers of her right hand; that the defendant was negligent in violating sections 1 and 6 of the child-labor law of 1910 (Park's Code, § § 3149 (a) 3149 (g), prohibiting employment, or the working in or about any mill, factory, laundry, manufacturing establishment, or place of amusement, of any child under fourteen years of age, except in specified instances not involved in this case, and prescribing punishment for a violation of the law; and that it was further negligent in putting the plaintiff, a child of tender years, at work at a machine which was dangerous to operate, the dangerous nature of the work being known to the defendant, but unknown to the plaintiff on account of her age and inexperience.

The evidence disclosed that the plaintiff first talked to one of the defendant's employees, called " the assistant forelady, " who was her neighbor and knew her age, and who told her she would have to say she was sixteen years old, in order to get employment with defendant. Acting on this advice, though knowing she was only twelve years old, she represented her age to be sixteen in order to get a job, and also signed a paper entitled " application for employment with the Nunnally Company, " the contents of which she did not know. She was assigned duty as a candy-packer, and performed such duty for about two days, when she was put to work at the caramel-chopper. She had worked at this machine about two hours when she was injured substantially as alleged. She had previously worked at two places, but the work was not about machinery. Her parents did not know she was going to apply for work with the defendant, but did not object after they did know. She was in the fourth grade at school, but was not in attendance at the time of the injury, because of typhoid fever in school. At the time of the trial she was fourteen years old. She was married a year after her injury, but her husband left her. She testified : " Sure I know how to cook, . . to make bread, prepare steak, and cut bacon with a knife. Sure I knew . . . if my fingers came in contact with that knife it would cut them. If you raked the candy from them and it hit your fingers, it would cut them. As to whether the lady in charge who showed me how to do the work was named Miss ———, ˙yes, sir, but

I didn't need nobody to show me how to rake the candy from the knife. When they turned the crank they showed me how they did that. You would just put your hand and pull the candy away after it came from under the knife. There was no steel guard to keep my hand away from the knife, or anything to protect it. You could see the knife working up and down. As to why I didn't keep my hand away, I was supposed to rake the candy from the knife, and it shut down on my fingers. . . The knife was not dangerous unless you put your finger under there, but how could you help it when you had to rake the candy off of the board and the board wasn't any longer than that? You could see the knife rising and falling. I knew if I put my fingers under it they would get cut. As to whether it would have cut my hand if I held it like you illustrate it, . . how could you rake the candy off holding it like that? You couldn't rake it off very easy, the way you illustrate, because you couldn't rake it off fast enough. Yes, I put my hand under it too far and it got under the blade and the knife shut down. I have grown a good deal since I got married. I weigh 169 now. My parents knew about the application for the license, but they didn't consent for me to marry, . . they didn't try to keep us from it. I have always been strong and healthy. . . I have never worked at a caramel-chopper before. . . As to what I meant by the boy turning the knife loose and it falling, I meant that when he got through chopping candy he turned it loose and it went fast, and he stopped the knife, and it shut down on my fingers. I mean he had hold of the wheel that was turning it. The wheel had a handle to it; . . after he turned it loose it went fast. He could have it going fast or slow, whichever he wanted it to, but it was fast after he turned it loose. As to what I meant by turning loose the knife, he taken his hand off the knife and it was still running, because it was running when he chopped the candy, and he taken his hand off when I was raking the candy from under it." A physician testified to the injury, and further swore, "I charged everything to J W. Ransom, because it was one of his children. Yes, she looks right smart now like she did then. There is no particular change, but she seems some stouter and some taller. At that time she was only a child, and I was surprised to know that she had been at work."

The judgment granting a nonsuit was error.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*